Owen, C. J.
In August, 1868, George P. Brown and J. G. 'Weller, being owners in fee-simple of a certain tract of land situated in Butler county, Ohio, executed and deliv-i ered to George Ilerron a mortgage thereon to secure, among others, a note for the sum of $4,000, payable to the order of Herron. The mortgage contains the following recitals:
“ This indenture witnesseth, that George P. Brown and J. G. Weller, ... all of Butler county, Ohio, mortgage and warrant to George Herron, Sr., of Mt. .Carmel, Franklin county, in the state of Indiana, the following real estate in the city of Hamilton, county of Butler, state of Ohio, to wit: ” (Here follows a description of the real estate.)
“Together with all the privileges' and appurtenances to the same belonging to secure the payment, when they become due, of eleven promissory notes of even date herewith, the first ten being for two hundred dollars ($200) each, . . . and the eleventh for four thousand ($4,000) dollars at five years after date, all of the said notes being executed by the aforesaid Geo. P. Brown and J. Geo. Weller, payable to the order of the said George Herron, Sr.,atMt. Carmel aforesaid, . . . with the agreement morever superadded, that if default be tmade in the payment of any of said notes at maturity, then all said notes unpaid at the time of such default shall become due and payable, and to be collected by foreclosure^ of this mortgage or otherwise.”
This mortgage was executed and delivered in the state of *271 Indiana. The cause, which was one to foreclose this mortgage and others subsequent thereto, was tried on appeal in the district court.
It was established as a fact in the case that by the statutes of the State of Indiana, the operative words in a mortgage conveyance are “mortgage and warrant,” and the same convey to the grantee in the mortgage an estate in fee-simple in the lands described, without the use of the words “heirs and assigns forever,” or auy other words of perpetuity.
This mortgage was duly recorded iu Butler county, Ohio, and its record antedates all other liens. Herron, the mortgagee, died before the maturity of the note which the. mortgage was intended to secure.
The plaintiffs in error, Brown and Carr, duly acquired title to the note and mortgage after his death.
Other mortgage liens having attached to the lands, after the death of Herron, the controversy which we are considering, involves the question of the priority of these subsequent liens to that of the Indiana mortgage. Among other things, the district court held that this mortgage conveyed to Herron only a life estate in the lands (by reason of the omission of words of perpetuity), that at his death the estate terminated, and the mortgage ceased to exist as a lien thereon. The decree and order of distribution of which the plaintiffs in error complain were based, chiefly, upon this holding. While other questions arise upon the record .and are discussed by counsel, we place our disposition of the case upon the conclusion we have reached upon this question, and to it alone we address our consideration.
Bid the security which this mortgage created in favor of the holders of the $4,000 note, which it describes, die with the mortgagee ?
Two cases are relied upon to support the conclusion of the court below, that but a life interest was pledged by the mortgage in question to secure the notes of the mortgagors. They are Sedgwick v. Laflin, 10 Allen, 430, and Clearwater v. Rose, 1 Blackf. 137.
In the former case it was held that “ a mortgage of land *272 to an individual, ‘ his successors and assigns forever,’ conveys only a life estate, although it contains a power of sale, which has never been executed, authorizing the mortgagee, in case of default in the performance of the condition, to sell the land and execute a conveyance thereof in fee-simple.” The proceeding was by writ of entry to foreclose the mortgage and clearly required an estate in fee in the plaintiff to support it. An examination of the opinion shows that the conclusion of the court is based upon an early colonial statute, which the court say “ was inserted in each successive revision of the laws of the colony; and so the law of Massashusetts has continued to this day as to all deeds, except conveyances upon such trusts as in their nature require an estate in fee to support them.”
This statute provided “that in all deeds and conveyances . . . wherein an estate of inheritance is to pass, it shall be expressed in these words, or to the like effect, viz : ‘ To have and to hold the said house or lands, respectively, to the party or grantee, his heirs and assigns forever.’ ” Concerning the power to sell, the opinion declares: “This power, if it could be executed at all according to the provisions of this mortgage, and had been executed, might perhaps ham transmitted an estate in fee in the land; but not having been executed, that point does not arise. It is, to say the least, very doubtful whether this power is sufficiently definite to be executed at all; for it only authozizes a sale ‘ at public auction, according to the act in such casé made and provided;’ and our statutes contain no regulations on the subject.”
In the case of Clearwater v. Rose, cited supra, Scott, J., says: “That the interest conveyed by the mortgage is only a life estate, there is no doubt. The mortgage contains no words of inheritance; nothing which shows that the grantor intended such a perpetuity of interest as is essential to an estate in fee.”
These cases are relied upon in 1 Jones on Mortgages, sec. G7, to support the statement of the author that a mortgage without the word “ heirs ” in the habendum *273 clause conveys but a life estate, and that the estate is not enlarged by a power of sale and conveyance in fee-simple.
It may be conceded that, as a general rule, the use of the word “ heirs ” is essential to the conveyance of a fee-simple estate in lands. This, however, is not to be accepted as an iron rule, admitting of no exceptions or qualification. Gould v. Lamb, 11 Met. 86.
“ Every deed is to be so construed as, if possible, to give effect to the intention of the parties. It is to be construed most strongly against the grantor. If the intention of the parties, apparent upon the face of the instrument, can not be carried into effect, this object should be attained as far as is possible.” White v. Sayre, 2 Ohio, 113.
In Bobo v. Wolf, 18 Ohio St. 465, Day, C. J., said that, in determining the true construction of a deed, “ we must seek for the real meaning intended to be expressed by the language used in the deed. For this purpose we may read it in the light of the circumstances that surrounded the parties at the time it was executed.”
Looking to the circumstances of the parties at the time of the execution of this mortgage we find them attempting to provide a security for the payment of several thousand dollars, evidenced by negotiable promissory notes.
This is sought to be done by pledging certain real estate by the use of a mortgage deed. We find the mortgagors in the state of Indiana. The form of the instrument used to express their intention is such as the law of that state expressly authorized and prescribed for the conveyance of lands in fee-simple as mortgage security for a debt. We are not unmindful of the principle that deeds intended to convey or incumber an interest in lands situated in one state, executed in another, must derive their vitality from the laws of the former.
It was to give effect to such instruments that it has long been provided in Ohie that: “All deeds, mortgages, . . . for the conveyance or incumbrance of lands . . . situate within this state, executed and acknowledged, or proved in any other state, ... in conformity with the laws of *274 this state, . . . shall be as valid as if executed within this state.” (Sec. 4111, Bevised Statutes.)
It is not our present purpose to construe this provision, or to say that it gives to the instrument before us the same effect it would have had as a mortgage of Indiana lands. We leave that question unconsidered. We are dealing with this feature of the case as one of the circumstances in the light of which the parties were dealing at the time of the execution of this instrumeni;. By its terms the mortgagors declared that they “mortgage and warrant” the lands described, “ to secure the payment, when they become due, of eleven promissory notes,” etc.
This word “mortgage” is one of potent significance. When used as a verb (as it is in the instrument before us), Webster defines it: “1. (Law.) To grant or convey, as property, for the secui’ity of a debt, or other engagement, upon a condition that if the debt or engagement shall be dis-discharged according to the contract, the conveyance shall be void, otherwise to become absolute, subject, however, to the right of redemption.”
It was unmistakably the intention of the parties to this deed that the lands described were to be pledged as a security for the debt. That such security should abide until the debt was paid. It would do violence to the language used to suppose that the parties contemplated that only a life estate was being pledged for that purpose — that the security was destined to die with the mortgagee. It is a familiar principle that whatever changes the evidence of a mortgage debt may undergo, or into whosesoever hands it may pass, the mortgage security still attaches to it and remains an incident of it until it is discharged. Patterson v. Johnston, 7 Ohio (part 1), 227; Choteau v. Thompson, 3 Ohio St. 428; Brinckerhoff v. Lansing, 4 Johns. Ch. 65.
■ These notes were, by their terms, negotiable. This mortgage was plainly intended to devote the lands described in it to the purpose of securing the payment of these notes, into whosesoever hands they should pass. Whatever estate was necessary to secure the payment of *275 these notes must have been intended to pass by this mortgage. This mortgage further provides that if default be made in the payment of any of these notes they are “to be collected by foreclosure of this mortgage or otherwise.” If the recitals of this mortgage to which we have already called attention leave any doubt as to its real purpose, it is solved by the provision last cited. If théterm “foreclosure” was employed in its general legal sense, we see (JBouvier’s Law Die.), that the parties contemplated: “1. A proceeding in chancery by which the mortgagor’s right of redemption of the mortgaged premises is barred or closed forever. 2. This takes place when the mortgagor has forfeited his estate by non-payment of the money due on the mortgage at the time appointed, but still retains the equity of redemption; in such case, the mortgagee may file a bill calling on the mortgagor, in a court of equity, to redeem his estate presently, or, in default thereof, to be forever .closed, or barred from any right of redemption.”
It is more reasonable to suppose, however, that it was contemplated by the parties that the foreclosure proceedings provided for by the mortgage must be instituted in the state and county where the lands were situated. This necessarily involved the sale of the mortgaged premises. (Section 5816, ’ Revised Statutes.) The purchaser un der such a proceeding takes the complete title of both mortgagor and mortgagee. Carter v. Walker, 2 Ohio St. 339; Parmenter v. Binkley, 28 Ohio St. 36.
By no other method known to our law can the mortgagor’s equity of redemption be barred and foreclosed. Thus we see that by the express provisions of this mortgage a purchaser may become invested with a fee-simple estate in the lands “mortgaged” to secure the note which, passed into the hands of the plaintiffs in error.
In the case of Sedgwick v. Laflin, supra, it is practically conceded that if the power of sale which the mortgage contained had been executed, it would have passed an estate in fee in the mortgaged premises. In the case at bar the parties for whose benefit the mortgage was made — the *276 holders of the mortgage debt — are proceeding to execute the express provisions of the mortgage by foreclosing the equity of redemption through a sale of the lands. Instead of an authority against the claim of the plaintiffs in error, the case last cited is in reality one of its strongest supports. Instead of this mortgage being one wherein (in the words of the opinion in the case of Clearwater v. Rose, supra) there is “nothing which shows that the grantor intended such a perpetuity of interest as is essential to an estate in fee,” the conclusion is irresistible that such a perpetuity of interest was not only intended to pass, but it is expressly provided for. This case, therefore, is not found to stand in the way of the construction contended for by the plaintiffs in error.
From the construction of this mortgage which prevailed in the court below, the strange result must follow that the enforcement of the express stipulations of the parties according to their plain and manifest intention is impossible. If but a life estate passed to the mortgagee, and the security was buried with him, one of the vital and important provisions of the instrument — that which provides for the collection of the note upon default of payment — must perish. A proposition so at war with the familiar l-ule which requires us to construe every deed most strongly against the grantor can not prevail.
We ai’e here to enforce, not to defeat, the deliberate agreements of parties.
It is not necessary to assume that the subsequent incumbrancers are charged with notice of the statute of Indiana, prescribing a form of conveyance necessary to constitute a mortgage in fee of lands. There are sufficient recitals in this mortgage to evidence the intention of the parties to it, and the record of it sufficiently charged all persons dealing with the lands with notice of what that intention was.
While we may not be able to harmonize all the adjudications upon this question, the better doctrine seems to be that where the language employed in, and the recitals and conditions of, a mortgage plainly evidence an intention to pass the entire estate of the mortgagor as security for the *277 mortgage debt, and the express provisions of the instrument can not otherwise be carried into effect, it will be construed to pass such estate, although the word “ heirs ” or other formal word of perpetuity is not employed.
The conditions of this mortgage, construed together, plainly bring it within the exceptions to the general rule that the use of the word “heirs” is essential to the conveyance of an estate in fee-simple, or other interest greater than a life estate.
The district court erred in holding that but a life estate was conveyed by the mortgage in question.
This conclusion removes the necessity of considering other assignments of error. The judgment of the district court is reversed, and the cause remanded to the circuit court for further proceedings, in accordance with the above holding.